UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER MITCHELL,<br>    Plaintiff,<br><br>v.<br><br>3 POINT ATHELTICS LLC; DAVID REGNIER and THOMAS SCHWEITZER,<br><br>    Defendant. | Case No. 1:21-cv-02616<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION & ORDER**

In this action, Plaintiff Peter Mitchell ("Mitchell"), a former member of Defendant 3 Point Athletics, LLC ("3 Point") sues 3 Point for breach of a Membership Purchase Agreement (Count I). Mitchell also sues 3 Point and its two member managers, David Regnier ("Regnier") and Thomas Schweitzer ("Schweitzer"), for fraudulent transfer in violation the Illinois Fraudulent Transfer Act ("UFTA") (Count II); and sues Regnier and Schweitzer for breach of fiduciary duty (Count III). Defendants Regnier and Schweitzer (collectively "Defendants" for purposes of this Motion) moved to dismiss Counts II and III. [10]. For the reasons discussed below, the Court denies Defendants' Motion.

**I.    BACKGROUND**

3 Point is an Illinois limited liability company that provides sports programs throughout Chicago. [1] ¶¶ 3, 7. Until December 12, 2018, Plaintiff and Defendants

1

served as 3 Point's sole member managers. *Id.* ¶ 8. On December 12, 2018, Plaintiff sold his membership interest back to 3 Point through a Membership Purchase Agreement ("the Agreement"). *Id.* ¶ 9. Under the Agreement, 3 Point agreed to pay Plaintiff $152,500 in monthly installments over 6 years. *Id.* ¶ 11.

At some point after executing the Agreement, 3 Point began facing financial problems; by September 2020 it became unable to pay its debts as they became due, and its debts exceeded its assets. *Id.* ¶ 13. Even with these financial problems, however, 3 Point made monthly payments to Plaintiff under the Agreement until February 2021. *Id.* ¶ 16. When 3 Point stopped making payments to Plaintiff, it owed Plaintiff $87,840. *Id.* ¶ 2.

Further, sometime in December 2020, 3 Point obtained a $40,000 loan. *Id.* ¶ 14. This loan constituted substantially all of 3 Point's assets at the time. *Id.* Yet, rather than use the loan to pay off 3 Point's debt to Plaintiff, Regnier and Schweitzer caused 3 Point to transfer $30,000 of the loan monies to themselves as back wages. *Id.* ¶¶ 15–16.

Plaintiff sued 3 Point for breach of the Agreement and fraudulent transfer in violation of the UFTA (Counts I and II). He also sued Regnier and Schweitzer, alleging that they caused 3 Point to fraudulently transfer the $30,000 loan proceeds to themselves in violation of the UFTA (Count II) and breached their fiduciary duties to Plaintiff (as 3 Point's creditor) (Count III). *Id.* ¶¶ 28, 32, 39. While 3 Point answered the Complaint, [9], Defendants moved to dismiss Counts II and III, [10].

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To be plausible on its face, the plaintiff, must plead factual content sufficient to allow the court to draw the inference that defendant is liable for the alleged conduct. *Iqbal,* 556 U.S. at 678 (citing *Bell Atl.,* 550 U.S. at 556). The Court accepts as true all well-pled facts in the complaint and construes them in the light most favorable to the plaintiff. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). The Court, however, need not accept legal conclusions. *Iqbal,* 556 U.S. at 678.

If the complaint alleges fraud, then Federal Rule of Civil Procedure 9(b) also requires the plaintiff to plead with particularity facts supporting the fraud allegations. Fed. R. Civ. P. 9(b). In other words, the complaint must specify the "who, what, when, and how" of the alleged fraud. *Rao v. BP Products North Am., Inc.*, 589 F.3d 389 (7th Cir. 2009). Here, Plaintiff brings a state law claim for fraudulent transfer in violation of the UFTA and this Court exercises jurisdiction over the claim via diversity jurisdiction. [1] ¶¶ 3–5, Count II. A federal court sitting in diversity applies the federal pleading requirements even when "the claim pleaded arises under state rather than federal law." *Muick v. Glenayre Elecs.,* 280 F.3d 741, 743 (7th Cir.2002). As such, the 9(b) heightened pleading standard applies to Plaintiff's UFTA claim. *See Rubbermaid Inc. v. Robert Bosch Tool Corp.,* No. 09-1395, 2010 WL 3834410, at *3 (C.D. Ill. Sept. 23, 2010).

**III. Analysis**

    **A.**    **Fraudulent Transfer Under UFTA (Count II)**

Plaintiff alleges that 3 Point's $30,000 transfer to Regnier and Schweitzer for back wages constitutes a fraudulent transfer under §§ 5(a) and 6(b) of the UFTA. [1] ¶¶ 24–31. Illinois enacted the UFTA to allow creditors "to defeat a debtor's transfer of assets to which the creditor was entitled." *A.G. Cullen Const., Inc. v. Burnham Partners, LLC,* 29 N.E.3d. 579, 586 (Ill. App Ct. 2011). Section 5(a) covers actual fraud (*i.e.*, fraud in fact) (§ 5(a)(1)) and constructive fraud (*i.e.*, fraud in law) (§ 5(a)(2)). *See* 740 ILCS 160/5(a); *A.G. Cullen Const.,* 29 N.E.3d at 586. Section 6(b) relates to transfers made when a debtor is insolvent. 740 ILCS 160/6(b). The Court now considers the sufficiency of the Complaint's allegations as to each provision.

    **1.**    **Fraudulent Transfer under § 5(a)(1)**

To establish actual fraud under § 5(a)(1), a creditor must prove that a debtor made a transfer "with the intent to hinder, delay, or defraud creditors." 740 ILCS 160/5(a)(1). A court may infer intent where "the circumstances indicate that the main or only purpose of the transfer was to prevent the lawful creditor from collecting a debt." *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1186 (7th Cir. 1987). The UFTA sets out eleven illustrative factors, also called "badges of fraud," for a court to consider in determining whether a debtor possessed the requisite intent. *See* 740 ILCS 160/5(b); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 964–65 (N.D. Ill. 2011). These enumerated factors "are merely considerations" but, when they exist "in sufficient number, it may give rise to an inference or presumption of fraud." *Steel*

4

*Co. v. Morgan Marshall Indus., Inc.,* 662 N.E.2d 595, 602 (Ill. App. Ct. 1996). In some cases, the presence of merely one factor may suffice and, in all instances, the debtor bears "the burden of dispelling an implication of fraud." *Bank of Am. v. WS Mgmt., Inc*., 33 N.E.3d 696, 724 (Ill. App. Ct. 2015).

First, Defendants argue that Count II fails because the Complaint does not adequately allege that Plaintiff was a "creditor" and 3 Point a "debtor." [10] at 3; [15] at 3–4. The UFTA defines a "creditor" as "a person who has a claim" and a "debtor" as "a person who is liable on a claim" where "person" is defined to include a "corporation." 740 ILCS 160/2. The Complaint alleges that Plaintiff has a claim pursuant to the Agreement and 3 Point is liable for that claim pursuant to the Agreement. [1] ¶¶ 9–12. Thus, the Complaint alleges facts sufficient to support Plaintiff's alleged status as a "creditor" and 3 Point's alleged status as a "debtor."

Next, Defendants argue that Plaintiff also fails to allege intent because the Complaint does not set out facts demonstrating either specific intent or any of the eleven "badges of fraud." [10] at 3–4. Not so. Plaintiff alleges that: (1) Regnier and Schweitzer were 3 Point insiders, [1] ¶¶ 3, 30; (2) the $30,000 transfer constituted substantially all of 3 Points assets, *id*. ¶ 29; and (3) 3 Point was insolvent at the time it made the transfer, *id.* These allegations go to three of the eleven badges of fraud. *See* 740 ILCS 160/5(b)(1), (5), and (9).

Defendants insist that these allegations do not suffice, however, because Plaintiff only conclusorily asserts that Defendants were "insiders", and 3 Point was "insolvent" and fails to support such assertions with facts. *Id*. at 3; [15] at 3–4. First,

5

the UFTA defines an "insider" to include both "a person in control of the debtor [corporation]" and "a managing agent of the debtor." 740 ILCS 160/2. The Complaint alleges that Defendants were the sole member managers of 3 Point at the time of the transfer. [1] ¶¶ 3, 30. Thus, Plaintiff alleges facts sufficient to support Defendants' alleged status as 3 Point "insiders."

Second, whether and when a company becomes insolvent constitutes an issue of law. Since 3 Point is an Illinois limited liability company, [1] ¶ 3, Illinois law governs. *See* 805 ILCS 180/1-65. Under Illinois law, a corporation becomes insolvent when its liabilities exceed its assets. 740 ILCS 160/3(a); *see also Baldi v. Samuel Son & Co.*, 548 F.3d 579, 581 (7th Cir. 2008) (defining "insolvency" as "having a balance sheet in which liabilities exceed assets"). Plaintiff alleges that, as of September 2020, 3 Point's debts were greater than its assets. [1] ¶ 13. He further alleges that the $40,000 loan that 3 Point received in December 2020 constituted substantially all of its assets, *id.* ¶ 14; and 3 Point owed him over $87,000 at the time, *id.* ¶¶ 2, 23. Construing the Complaint in the light most favorable to Plaintiff, it sufficiently alleges that 3 Point was insolvent at the time of the $30,000 transfer.

Defendants insists that 3 Point was solvent in December 2020 because, as the Complaint acknowledges, 3 Point continued to pay Plaintiff monthly installments until February 2021. [15] at 4; [1] ¶ 21. But Defendants do not point to any rule that states a company is solvent so long as it makes some debt payments. *Id.* Therefore, this fact does not demonstrate that 3 Point was solvent.

6

Finally, the allegations also sufficiently set out the "who, what, where, and how" of the fraud to meet the Rule 9(b) heightened pleading standard. Accordingly, at this stage in the proceeding and drawing all reasonable inferences in Plaintiff's favor, Plaintiff plausibly alleges a UFTA § 5(a)(1) fraudulent transfer claim against Defendants.

### 2. Fraudulent Transfer under § 5(a)(2).

In contrast to actual fraud under § 5(a)(1), constructive fraud under § 5(a)(2) may exist regardless of a defendant's intent. *See A.G. Cullen Const.,* 29 N.E.3d. at 586. Instead, the question becomes whether the debtor transferred the assets without receiving reasonably equivalent value in return and was, or became, insolvent at the time of the transfer. *See* 740 ILCS 160/5(a)(2); *A.G. Cullen Const.*, 29 N.E.3d at 586. Plaintiff's Complaint alleges just that. He asserts that 3 Point transferred $30,000 to Regnier and Schweitzer "for less than the reasonably equivalent value" and that 3 Point was insolvent at the time. [1] ¶¶ 16, 30, 31. Accordingly, the Complaint also sufficiently alleges constructive fraud under § 5(a)(2) of the UFTA.

### 3. Fraudulent Transfer under § 6(b).

Finally, under the UFTA § 6(b), a transfer may be fraudulent as to a creditor if: (1) the creditor's claim arose before the transfer; (2) the transfer was to an insider; (3) for an antecedent debt; (4) the debtor was insolvent at the time of the transfer; and (5) the insider had reason to believe the debtor was insolvent. *See* 740 ILCS

7

160/6(b); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 963 (N.D. Ill. 2011).

Plaintiff's Complaint alleges facts as to each of these elements. He claims that: (1) he was a "creditor" and 3 Point a "debtor" at the time of the $30,000 transfer, [1] ¶¶ 26–27; (2) 3 Point transferred the funds to Regnier and Schweitzer who are insiders of 3 Point, *id.* ¶ 30; (3) the transfer was for back wages, *id.* ¶¶ 14, 28; and (4) 3 Point was insolvent at the time of the transfer, *id.* ¶¶ 13, 16, 29. Further, although the Complaint does not explicitly allege that Defendants knew that 3 Point was insolvent, Plaintiff argues that the Court may reasonably infer it because, as 3 Point's sole member-managers, Defendants had reasonable cause to believe 3 Point was insolvent. [13] at 5.

As discussed above, the Complaint alleges facts sufficient to support the legal assertions that Plaintiff was a "creditor"; 3 Point was a "debtor" and "insolvent" at the time of the transfer; and Defendants were 3 Point "insiders." Further, the Court agrees that one may reasonably infer that Defendants, by virtue of their insider status at 3 Point, had reasonable cause to believe 3 Point was insolvent. Therefore, Plaintiff's Complaint sufficiently alleges fraudulent transfer under the UFTA § 6(b).

**B.     Breach of Fiduciary Duty (Count III)**

Defendants also move to dismiss Plaintiff's breach of fiduciary duty claim, arguing that they did not owe a fiduciary duty to Mitchell. [10] at 6. They primarily focus on the fact that they were not parties to the Agreement. [10] at 6–7. They

8

contend that a company's managers and directors do not owe a fiduciary duty to a company's creditors. *Id*.

To a certain degree, Defendants are correct. Plaintiff and 3 Point executed the Agreement, not Defendants. [1] ¶ 9, Ex. A. Generally, officers, directors, and managing members of a company do not owe fiduciary duties to the company's creditors. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008). Yet, this rule is not absolute under Illinois law, which the parties agree controls because 3 Point is an Illinois limited liability company. [13] at 8; [15].

Under corporate law principles, directors and officers may owe fiduciary duties to creditors in certain circumstances, such as when a corporation becomes insolvent. *See Atkinson Candies*, 529 F.3d at 384. This rule arises because once a corporation becomes insolvent, "the assets of the corporation must then be regarded as a trust fund for the payment of all its creditors and the directors occupy the position of trustees and fiduciaries." *Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1011 (N.D. Ill. 1999) (quoting *Coleman v. Howe*, 39 N.E. 725, 727 (Ill. 1895)). Although 3 Point is a limited liability company, this corporate law principle is "fully applicable to managers of insolvent limited liability companies." *In re McCook Metals, LLC*, 319 B.R. 570, 595 (Bankr. N.D. Ill. 2005) (citing *Anest v. Audino*, 773 N.E.2d 202, 209 (Ill. 2002) (holding that fiduciary duties of a corporate shareholder are owed by members of an Illinois limited liability company)).

As discussed above, Plaintiff plausibly alleges that 3 Point was insolvent at the time it received the $40,000 loan and transferred $30,000 to Defendants as back wages. Accordingly, Plaintiff plausibly alleges that Defendants, as 3 Point's sole managing members, owed to Plaintiff a fiduciary duty at the time of the transfer. The Court denies Defendants' motion to dismiss Count III.

> C. **Whether the $40,000 Loan Came from the "Paycheck Protection Program"**

Finally, Regnier and Schweitzer contend that, regardless of 3 Point's financial status, Plaintiff's claims fail because the $40,000 loan at issue came from the federal government's CARES Act "Paycheck Protection Program" ("PPP Loan"), which "was designed to keep American workers on payrolls despite the economic impacts of COVID-19." [10] at 4–5. They argue that the PPP loan terms did not permit 3 Point to use the funds to pay Plaintiff. *Id*. This argument, however, relies upon factual assertions not contained within the Complaint. The Court cannot consider such arguments at the motion to dismiss stage. *See Rodgers v. Lincoln Towing Svcs, Inc.*, 771 F.2d 194, 198 (7th Cir. 1985). Instead, on a motion to dismiss under 12(b)(6), the Court evaluates the sufficiency of the complaint not the merits of the case. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court, having done so above, finds that Plaintiff's Complaint sufficiently alleges claims against Defendants for violation of the UFTA §§ 5(a) and 6(b) and breach of fiduciary duty.

## IV. Conclusion

For the reasons set forth above, the Court denies Defendants Regnier and Schweitzer's Motion to Dismiss [10].

Entered: March 22, 2022

_____
John Robert Blakey
United States District Judge